_____

| | |
|---|---|
| DEREK SCHAFFER, Individually and on Behalf of Home Mortgage Corporation, and CARL DIANTONIO, Individually and on Behalf of Home Mortgage Corporation, | 1:18-cv-08842-NLH-AMD |
| | **OPINION** |

            Plaintiffs,

       v.

HOME MORTGAGE CORPORATION,
MARVIN J. ZAGORIA, DONALD E.
SISSON,JOEL S. ARDGETTI,
ESQ., LARRY WARNER, ROBIN
HOLLAND, JANIS KOPLIN
ZAGORIA, and PNC BANK,

            Defendants.

DONALD E. SISSON,

            Counter-Claimant,

       v.

DEREK SCHAFFER and CARL
DIANTONIO,

            Counter-Defendants.

_____

**APPEARANCES**:

DANIEL HENRY MARIANI
MATTHEW R. MCCRINK
MCCRINK, KEHLER & MCCRINK
475 ROUTE 73 NORTH
WEST BERLIN, NJ 08091

    _On behalf of Plaintiffs/Counter-Defendants_

DOUGLAS F. JOHNSON
EARP COHN P.C.
20 BRACE ROAD
4TH FLOOR
CHERRY HILL, NJ 08034

     *On behalf of Defendant Janis Koplin Zagoria*

DONALD E. SISSON
175 ACTION DRIVE
FAYETTEVILLE, GA 30215

     *Appearing pro se*

JAMES A. KASSIS
SCHENCK, PRICE, SMITH, & KING, LLP
220 PARK AVENUE
PO BOX 0991
FLORHAM PARK, NJ 07932-0991

     *On behalf of Defendant PNC Bank*

**HILLMAN, District Judge**

This matter concerns claims by Plaintiffs that Defendants conspired to steal or convert Plaintiffs' funds deposited in an escrow account at PNC Bank intended as a good faith deposit for Plaintiffs' purchase of Home Mortgage Corporation. Defendants PNC Bank and Donald Sisson have moved to dismiss Plaintiffs' claims.

For the reasons expressed below, Defendants' motions will be granted in part and denied in part.[1] Plaintiffs shall be afforded thirty days to move for leave to file a third amended complaint.

---

[1] The Court will also dismiss without prejudice Defendant Sisson's counterclaim. See, *infra*, note 16.

**<u>BACKGROUND</u>**

According to Plaintiffs' second amended complaint,[2] in early

---

[2] On May 4, 2018, Plaintiffs filed a complaint asserting jurisdiction based on diverse citizenship and an amount in controversy in excess of $75,000, exclusive of interests and costs, pursuant to 28 U.S.C. § 1332(a). (Docket No. 1.)  On June 19, 2018, the Court issued an Order to Show Cause as to why Plaintiffs' complaint should not be dismissed for lack of subject matter jurisdiction because Plaintiffs' complaint failed to properly allege the citizenship of the individual and corporate parties. (Docket No. 8.)  Plaintiffs filed an amended complaint, and although the amended complaint corrected the pleading deficiencies of the citizenship of the individual parties, the amended complaint did not properly plead the citizenship of the corporate entities. (Docket No. 10.)  The Court issued a second Order to Show Cause regarding the remaining pleading deficiencies on July 3, 2018. (Docket No. 10.)  On July 5, 2018, Plaintiffs filed a second amended complaint, which appeared to correctly plead the citizenship of all the parties, with Plaintiffs averring that they are citizens of New Jersey, Defendant Home Mortgage Corporation is a citizen of Georgia (principal place of business and state of incorporation), the individual Defendants are citizens of Georgia, and Defendant PNC Bank is a citizen of Delaware (where it is incorporated and has its principal place of business). (Docket No. 13.)  In both of the Court's Orders to Show Cause, the Court noted that even though Plaintiffs' basis for this Court's subject matter jurisdiction was diversity, Count XIV in Plaintiffs' complaint alleged a violation of the Racketeer Influenced and Corrupt Organizations Act, 18 U.S.C. § 1962(c), providing federal question jurisdiction under 28 U.S.C. § 1331 and supplemental jurisdiction over Plaintiffs' state law claims under 28 U.S.C. § 1367.  The Court directed that Plaintiffs should replead federal question jurisdiction if that was their intent. (Docket No. 8, 12.)  Neither the amended complaint nor the second amended complaint changes the basis for this Court's subject matter jurisdiction.  Moreover, it appears to the Court that the citizenship of the parties is still in question in that PNC Bank's motion to dismiss indicates that it is incorporated in Delaware and has its principal place of business in Pennsylvania, not Delaware as pleaded by Plaintiffs.  Although Pennsylvania citizenship, if true, would not defeat diversity, this Court requires certainty as to subject matter jurisdiction not haphazard, shifting or inconsistent pleadings.  Moreover,

2016, Plaintiffs Derek Schaffer and Carl DiAntonio entered into
an agreement to purchase Defendant Home Mortgage Corporation
from Defendants Donald Sisson and Marvin Zagoria.  On March 10,
2016, Schaffer, DiAntonio, Sisson, and Zagoria went to a PNC
Bank branch in Georgia.  Schaffer and DiAntonio became
signatories on a new account in the name of Home Mortgage
Corporation (apparently called the "HMC-North account"), and
deposited $100,000 into the account as a good faith deposit to
be held in escrow as part of the agreement between the parties
to purchase Home Mortgage Corporation.  A PNC Bank employee,
Evelyn A. Stevenson, facilitated the transaction.

Plaintiffs left the bank, but they contend that Sisson and
Zagoria stayed behind.  Plaintiffs claim that without their
knowledge and permission, Stevenson added Sisson and Zagoria to
the new HMC-North account as co-signatories.  Plaintiffs relate
that Sisson and Zagoria maintained a separate bank account for
Home Mortgage Corporation at PNC Bank (referred to as the "HMC-

---

because the Court will dismiss Plaintiffs' RICO claim, the
parties' citizenships must be properly averred to confirm that
this Court may exercise diversity jurisdiction.  The parties
will be directed, therefore, to file a Joint Certification of
the Citizenship of the Parties within 10 days of the date of
this Opinion and accompanying Order.  See
https://www.njd.uscourts.gov/sites/njd/files/HillmanStandOrdDivC
itiz.pdf; Zambelli Fireworks Mfg. Co. v. Wood, 592 F.3d 412, 418
(3d Cir. 2010) (explaining that federal courts have an
independent obligation to address issues of subject matter
jurisdiction sua sponte and may do so at any stage of the
litigation).

South account").

Plaintiffs returned to New Jersey, and in that same month of March 2016, obtained a license for Home Mortgage Corporation through the New Jersey Department of Banking, and opened a branch in Voorhees, New Jersey.  Plaintiffs claim that they transacted mortgage business until December 2016.

On December 16, 2016, Plaintiffs allege that they discovered various fraudulent activities by Sisson and Zagoria when the IRS froze the HMC–North and HMC–South bank accounts. Plaintiffs claim that Sisson and Zagoria improperly used $92,000 of the $100,000 that was supposed to be held in escrow as good faith money for the sale of Home Mortgage Corporation. Plaintiffs also allege that Defendants failed to pay them over $62,800 in mortgage settlement funds, fees, and other charges.

In addition to the money Defendants allegedly unlawfully converted, Plaintiffs claim that Defendants further defrauded Plaintiffs by failing to add Plaintiffs' names as corporate officers to Home Mortgage Corporation's corporate documents or to register the corporate documents with the Georgia Secretary of State, even though it was understood between the parties when they entered into the purchase agreement that Plaintiffs would be named as corporate officers to Home Mortgage Corporation as part of the purchase agreement.

Plaintiffs have asserted fourteen counts in their complaint

as follows:

Count I – Fraud/Fraudulent Inducement against all Defendants;

Count II – Breach of Contract against all Defendants;

Count III – Breach of Covenant of Good Faith and Fair Dealing against all Defendants;

Count IV – Conversion against all Defendants;

Count V – Intentional Misrepresentation against all Defendants;

Count VI – Negligent Misrepresentation against all Defendants;

Count VII – Disgorgement against all Defendants except PNC Bank[3];

Count VIII – Breach of Fiduciary Duty against all Defendants;

Count IX – Accounting against all Defendants except PNC Bank;

Count X – Civil Conspiracy to Commit Fraud against all Defendants;

---

[3] Plaintiffs' complaint asserts Counts VII (Disgorgement), IX (Accounting), and XI (Imposition of Constructive Trust) against all Defendants.  PNC Bank's motion to dismiss states that it does not appear that those claims are directed at PNC Bank even though Plaintiffs assert those claims against "All Defendants." In their opposition brief, Plaintiffs concede that those claims are not against PNC Bank.

Count XI – Imposition of Constructive Trust against all

Defendants except for PNC Bank;

Count XII – Negligence against all Defendants;

Count XIII – Breach of Fiduciary Duty against PNC Bank; and

Count XIV – RICO against all Defendants.

(Docket No. 13 at 9-23.)

PNC Bank has moved to dismiss all of Plaintiffs' claims on various bases, including lack of standing, a forum selection clause, and deficient pleading. Sisson has also moved to dismiss Plaintiffs' claims.[4] None of the other Defendants,

---

[4] Sisson filed an answer to Plaintiff's original complaint and asserted a counterclaim. (Docket No. 5.) After Plaintiffs filed their first amended complaint and their second amended complaint, Sisson filed two motions to dismiss. (Docket No. 16, 17.) Sisson's motions contest the substance of Plaintiffs' allegations and relate his version of what occurred. In that way, Sisson's motions are more akin to summary judgment motions pursuant to Fed. R. Civ. P. 56, rather than motions to dismiss pursuant to Fed. R. Civ. P. 12. See Fed. R. Civ. P. 12(d) ("If, on a motion under Rule 12(b)(6) or 12(c), matters outside the pleadings are presented to and not excluded by the court, the motion must be treated as one for summary judgment under Rule 56."). The Court, however, will not convert Sisson's motion into one for summary judgment because it is too early in the case to resolve any disputed facts. See Petcove v. Public Service Electric & Gas, 2019 WL 137652, at *3 (D.N.J. 2019) (quoting Kurdyla v. Pinkerton Sec., 197 F.R.D. 128, 131 (D.N.J. 2000)) ("A court should not convert a motion . . . when little or no discovery has occurred.").

except for Janice Koplin Zagoria,[5] have appeared in the action.[6]

Plaintiffs have opposed Defendants' motions.

## DISCUSSION

### A.    Subject Matter Jurisdiction

As noted above, see supra note 2, Plaintiffs aver that this

Court has jurisdiction over this matter based on the diversity

of citizenship of the parties and an amount in controversy in

excess of $75,000, exclusive of interests and costs, pursuant to

28 U.S.C. § 1332(a).

---

[5] Counsel for Janice Koplin Zagoria filed a letter on August 3,
2018, in which he relates that there is no good faith basis for
Janice Koplin Zagoria to be named in the complaint, as she had
been divorced from Martin Zagoria and had turned over her shares
in Home Mortgage Corporation before the events in the complaint
occurred. (Docket No. 25.)  Counsel states that he reached out
to Plaintiffs' counsel seeking a stipulation of dismissal, but
Plaintiffs' counsel could not take any action on the stipulation
because of his pending motion to withdraw.  Eventually, on
September 21, 2018, a stipulation dismissing Plaintiffs' claims
against Janice Koplin Zagoria was entered. (Docket No. 33.)  In
what appears to be an administrative error, Ms. Zagoria remains
as an active defendant on the docket and the Court will direct
the Clerk to terminate her from the action.  With regard to
Plaintiffs' original counsel's motion to withdraw, the
Magistrate Judge granted that motion on September 21, 2018, and
new counsel was substituted on December 7, 2018.  Briefing on
PNC Bank's and Sisson's motions was extended due to the
substitution of counsel.  (Docket No. 35, 47.)  As discussed
herein, the change in legal representation of Plaintiffs is
relevant to the Court's resolution of the motions to dismiss.

[6] It does not appear that Plaintiffs have filed proof of service
for any of the Defendants.

**B.    Standard for Motion to Dismiss**

When considering a motion to dismiss a complaint for failure to state a claim upon which relief can be granted pursuant to Federal Rule of Civil Procedure 12(b)(6), a court must accept all well-pleaded allegations in the complaint as true and view them in the light most favorable to the plaintiff. Evancho v. Fisher, 423 F.3d 347, 351 (3d Cir. 2005).  It is well settled that a pleading is sufficient if it contains "a short and plain statement of the claim showing that the pleader is entitled to relief."  Fed. R. Civ. P. 8(a)(2).

"While a complaint attacked by a Rule 12(b)(6) motion to dismiss does not need detailed factual allegations, a plaintiff's obligation to provide the 'grounds' of his 'entitle[ment] to relief' requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do . . . ."  Bell Atl. Corp. v. Twombly, 550 U.S. 544, 555 (2007) (alteration in original) (citations omitted) (first citing Conley v. Gibson, 355 U.S. 41, 47 (1957); Sanjuan v. Am. Bd. of Psychiatry & Neurology, Inc., 40 F.3d 247, 251 (7th Cir. 1994); and then citing Papasan v. Allain, 478 U.S. 265, 286 (1986)).

> To determine the sufficiency of a complaint, a court must take three steps.  First, the court must "tak[e] note of the elements a plaintiff must plead to state a claim."  Second, the court should identify allegations that, "because they are no more than

> conclusions, are not entitled to the assumption of
> truth." Third, "whe[n] there are well-pleaded factual
> allegations, a court should assume their veracity and
> then determine whether they plausibly give rise to an
> entitlement for relief."

Malleus v. George, 641 F.3d 560, 563 (3d Cir. 2011) (alterations

in original) (citations omitted) (quoting Ashcroft v. Iqbal, 556

U.S. 662, 664, 675, 679 (2009)).

A district court, in weighing a motion to dismiss, asks

"not whether a plaintiff will ultimately prevail but whether the

claimant is entitled to offer evidence to support the claim."

Twombly, 550 U.S. at 563 n.8 (quoting Scheuer v. Rhoades, 416

U.S. 232, 236 (1974)); see also Iqbal, 556 U.S. at 684 ("Our

decision in Twombly expounded the pleading standard for 'all

civil actions' . . . ."); Fowler v. UPMC Shadyside, 578 F.3d

203, 210 (3d Cir. 2009) ("Iqbal . . . provides the final nail in

the coffin for the 'no set of facts' standard that applied to

federal complaints before Twombly."). "A motion to dismiss

should be granted if the plaintiff is unable to plead 'enough

facts to state a claim to relief that is plausible on its

face.'" Malleus, 641 F.3d at 563 (quoting Twombly, 550 U.S. at

570).

A court in reviewing a Rule 12(b)(6) motion must only

consider the facts alleged in the pleadings, the documents

attached thereto as exhibits, and matters of judicial notice.

S. Cross Overseas Agencies, Inc. v. Kwong Shipping Grp. Ltd.,

181 F.3d 410, 426 (3d Cir. 1999).  A court may consider,

however, "an undisputedly authentic document that a defendant

attaches as an exhibit to a motion to dismiss if the plaintiff's

claims are based on the document."  Pension Benefit Guar. Corp.

v. White Consol. Indus., Inc., 998 F.2d 1192, 1196 (3d Cir.

1993).  If any other matters outside the pleadings are presented

to the court, and the court does not exclude those matters, a

Rule 12(b)(6) motion will be treated as a summary judgment

motion pursuant to Rule 56.  Fed. R. Civ. P. 12(b).

### C.   Analysis

#### 1.   Plaintiffs' claims against PNC Bank

Plaintiffs claim that on March 10, 2016, they engaged PNC

Bank to open an account to hold their $100,000 good faith

deposit as part of the agreement between the parties to purchase

Home Mortgage Corporation.  Plaintiffs claim that they signed a

PNC Bank account registration and agreement document, which was

validated by the PNC Bank employee, Ms. Stevenson.[7]  Plaintiffs

claim that even though Home Mortgage Corporation principals

Donald Sisson and Marvin Zagoria were present during this

transaction, they did not sign the agreement establishing the

HMC-North account.  Plaintiffs allege that they left the bank,

---

[7] Plaintiffs did not attach the PNC Bank account documents to
their complaint, but it is attached to their opposition to PNC
Bank's motion to dismiss.  (Docket No. 52-3 at 5.)

but Sisson and Zagoria stayed behind. Plaintiffs allege that unbeknownst to them, Stevenson added Sisson and Zagoria as signatories to the HMC-North account, which later permitted Sisson and Zagoria to impermissibly withdraw $92,000 of Plaintiffs' good faith money that was intended to be held in escrow.

Plaintiffs claim that Stevenson's actions, for which PNC Bank is liable, constitute fraud, breach of contract, breach of covenant of good faith and fair dealing, conversion, intentional misrepresentation, negligent misrepresentation, breach of fiduciary duty, conspiracy to commit fraud, negligence, and RICO.

PNC Bank has moved to dismiss all of Plaintiffs' claims. PNC Bank argues that any claims arising out of the PNC Bank accounts are subject to a forum selection clause – the chosen forum being Pennsylvania state court – in the Treasury Management Services Comprehensive Agreement that Home Mortgage Corporation entered into with PNC Bank when it opened its accounts. PNC Bank further argues that Plaintiffs' contract and other common law claims are barred by the Uniform Commercial Code's one-year statute of limitations for such claims. PNC Bank also contends that the economic loss doctrine bars Plaintiffs' tort claims, and that Plaintiffs' fraud claims fail because they do not meet the heightened pleading requirements.

The Second Amended Complaint is not a model for modern pleading standards and PNC Bank is correct that several of the claims are not sufficiently pled.  However, PNC Bank's motion, which relies on technical and factual defenses not appropriate for a motion to dismiss, ignores the gravamen of Plaintiffs' complaint.  Whether the facts will sustain such claims or not, Plaintiffs allege they went to a PNC Bank branch and engaged with a bank officer for the purpose, and with the intent, to open an escrow account.  An escrow account is different than a demand deposit account by definition: an escrow is "property delivered by a promisor to a third party to be held . . . . until the occurrence of a condition, at which time the third party is to hand over the . . . . property to the promisee." Black's Law Dict., p. 624 (9th Ed. 2009).  Here, Plaintiffs aver that Stevenson understood the HMC-North account was an escrow account and nonetheless allowed the Defendants access to it for reasons inconsistent with the intent of the escrow agreement. It is from this basic factual allegation that Plaintiffs' claims against PNC Bank flow.

Essentially ignoring this central point, PNC Bank asserts various defenses arising out of terms, conditions, and standards applicable to ordinary banking and financial accounts. However, even where a bank has complied with the UCC provisions and the like, such compliance does not necessarily immunize it

from ordinary tort liability.  <u>Wolens v. Morgan Stanley Smith</u>

<u>Barney, LLC</u>, 155 A.3d 1, 5 (N.J. Super. Ct. App. Div. 2017)

(citing <u>Pennsylvania Nat. Turf Club, Inc. v. Bank of West</u>

<u>Jersey</u>, 385 A.2d 932, 936 (N.J. Super. Ct. App. Div. 1978)).[8]

"N.J.S.A. 12A:1-103[9] provides that 'principles of law and equity'

supplement the UCC, unless displaced by particular provisions,"

and "[t]his provision may be interpreted as permitting a claim

of negligence under the UCC absent a specific provision

---

[8] PNC Bank extensively cites to New Jersey law in its brief.  The
only legal citations in Plaintiffs' brief are two U.S. Supreme
Court cases and one District of New Jersey case, both in
relation to PNC Bank's forum selection clause argument.  Because
Plaintiffs do not argue that New Jersey law does not apply to
their claims, the Court will apply the relevant New Jersey law
in assessing the viability of Plaintiffs' claims.

[9] N.J.S.A. 12A:1-103 provides:

    a. The Uniform Commercial Code shall be liberally construed
    and applied to promote its underlying purposes and
    policies, which are:

    (1) to simplify, clarify, and modernize the law governing
    commercial transactions;
    (2) to permit the continued expansion of commercial
    practices through custom, usage, and agreement of the
    parties; and
    (3) to make uniform the law among the various
    jurisdictions.

    b. Unless displaced by the particular provisions of the
    Uniform Commercial Code, the principles of law and equity,
    including the law merchant and the law relative to capacity
    to contract, principal and agent, estoppel, fraud,
    misrepresentation, duress, coercion, mistake, bankruptcy,
    and other validating or invalidating cause supplement its
    provisions.

preempting such a claim." <u>Trump Plaza Associates v. Haas</u>, 692
A.2d 86, 91–92 (N.J. Super. Ct. App. Div. 1997) (citations
omitted).

"Where the question is one of a bank's negligence, a
plaintiff must establish the same four elements as in any other
negligence action, namely: a duty of care; a breach of that
duty; proximate cause; and damages." <u>Brick Professional, L.L.C.</u>
<u>v. Estate of Napoleon</u>, 2014 WL 1394191, at *12 (N.J. Super. Ct.
App. Div. 2014) (citing <u>Brunson v. Affinity Fed. Credit Union</u>,
199 N.J. 381, 400 (2009)).

A fundamental requisite for tort liability is the existence
of a duty owing from defendant to plaintiff, and a bank's duty
does not arise in the absence of a contract or "special"
circumstances. <u>Wolens</u>, 155 A.3d at 5 (citing <u>Pennsylvania Nat.</u>
<u>Turf Club</u>, 385 A.2d at 936) (finding that in "the absence of
evidence of any agreement, undertaking or contact between
plaintiff and defendant from which any special duty can be
derived," the bank did not owe a duty to a non-customer for
negligence and other claims). Whether a duty exists presents a
question of law. <u>Brick Professional</u>, 2014 WL 1394191 at *12
(citing <u>Kernan v. One Washington Park Urban Renewal Associates</u>,
713 A.2d 411, 415 (N.J. 1998)). "In making that determination,
a court must apply a fairness analysis in light of the
relationship of the parties, the nature of the risk, the

opportunity and ability to exercise care, and the public interest." Id. (citing Kernan, 713 A.2d at 445–46).

In this case, Plaintiffs allege that PNC Bank owed them a duty of care when they – and only the two Plaintiffs – signed an agreement to become signatories on a PNC Bank account in which they deposited their good faith $100,000 to be held in escrow.[10] Plaintiffs claim that PNC Bank breached this duty when Ms. Stevenson added Sisson and Zagoria to the account without their knowledge, which enabled Sisson and Zagoria to impermissibly withdraw their money. Plaintiffs allege that if PNC Bank had not breached its duty to hold in escrow their good faith money and maintain only Plaintiffs as signatories to the account as they had intended, they would not have lost $92,000. These allegations, while admittedly sparse, if accepted as true, meet the Twombly/Iqbal and Rule 8 pleading requirements to state a claim of negligence against PNC Bank. Thus, Plaintiffs' negligence claim survives PNC Bank's motion to dismiss.

The same can be said for Plaintiffs' claims sounding in breach of fiduciary duty and contract. As for Plaintiffs'

---

[10] The Court construes this agreement to constitute the requisite "agreement, undertaking or contact between plaintiff and defendant from which any special duty can be derived" as required under New Jersey law. Plaintiffs refer to it in their complaint, although it is not attached as an exhibit. Plaintiffs submitted a copy of the agreement in their opposition to PNC Bank's motion to dismiss. (Docket No. 52-3 at 5.)

breach of fiduciary duty claim against PNC Bank, ordinarily a "bank's relationship with a depositor is one of debtor-creditor," and a "[t]he virtually unanimous rule is that creditor-debtor relationships rarely give rise to a fiduciary duty." United Jersey Bank v. Kensey, 704 A.2d 38, 44 (N.J. Super. Ct. App. Div. 1997) (citations omitted). But here Plaintiffs claim a fiduciary relationship existed between Plaintiffs and PNC Bank in the form of an escrow which is by its very nature a relationship of trust. Accordingly, Plaintiffs have alleged sufficient facts to support a claim that their relationship with PNC Bank was one of the rare cases giving rise to a fiduciary duty.

As for a breach of contract claim, under New Jersey law a breach of contract claim includes four elements: (1) the parties entered into a valid contract, (2) the plaintiff honored his own obligations under the contract, (3) the defendant failed to perform his obligations under the contract, and (4) the plaintiff sustained damages as a result. MZL Capital Holdings, Inc v. TD Bank, N.A., 734 F. App'x 101, 105-06 (3d Cir. 2018) (citing Frederico v. Home Depot, 507 F.3d 188, 203 (3d Cir. 2007) (citing Video Pipeline, Inc. v. Buena Vista Home Entertainment, Inc., 210 F. Supp. 2d 552, 561 (D.N.J. 2002))). This claim too hinges on the essential reason that Plaintiffs claim they opened an account with PNC Bank: the creation of an

escrow account to hold a good faith down payment for the same of Home Mortgage Corporation. To the extent that PNC Bank opened an escrow account to facilitate the underlying purchase agreement and agreed to act as an escrow agent, use of the funds inconsistent with that agreement and alleged agency relationship makes out a plausible claim of breach of contract. Moreover, a valid breach of contract claim supports Plaintiffs' breach of the implied covenant of good faith and fair dealing.[11]

PNC Bank's motion does not warrant dismissal of Plaintiffs' tort-based or contractual claims as they simply assert defenses based on an alternative set of facts. Plaintiffs refute, and PNC Bank's documents do not establish, that Plaintiffs entered into the Treasury Management Services Comprehensive Agreement proffered by the bank when they opened the alleged escrow account, which contain the forum selection clause PNC Bank relies on and argues otherwise governs Plaintiffs' claims against PNC Bank. While it may very well turn out to be the

---

[11] "Every party to a contract, including one with an option provision, is bound by a duty of good faith and fair dealing in both the performance and enforcement of the contract." Brunswick Hills Racquet Club, Inc. v. Route 18 Shopping Center Associates, 864 A.2d 387, 395 (N.J. 2005) (citations omitted). "'Although the implied covenant of good faith and fair dealing cannot override an express term in a contract, a party's performance under a contract may breach that implied covenant even though that performance does not violate a pertinent express term.'" Hughes v. TD Bank, N.A., 856 F. Supp. 2d 673, 681 (D.N.J. 2012) (quoting Wilson v. Amerada Hess Corp., 244, 773 A.2d 1121 (N.J. 2001)).

operative document (or not) the Court has no basis at this stage
to conclude that the account documents proffered by the bank are
undisputedly authentic documents upon which Plaintiff's claims
are based.[12]  See Pension Benefit Guar., 998 F.2d at 1196.  These
fact-based defenses are better left to summary judgment motion
practice after appropriate discovery.

The remainder of Plaintiffs' claims against PNC Bank are
problematic in that they stray from the escrow account
allegation and lump the bank in with the principals of Home
Mortgage Corporation.  In these Counts, Plaintiffs simply allege
that "all Defendants" collectively committed the various
violations of law, without specifying any facts to show how PNC
Bank committed those violations.  This is fatal to the remaining

---

[12] The Treasury Management Services Comprehensive Agreement
proffered by PNC Bank appears to be a blank template (Docket No.
23-2 at 4-41), except for Zagoria's signature on two pages that
are dated five days after Plaintiffs, Sisson, and Zagoria
appeared at PNC Bank to open the HMC-North account (Docket No.
23-2 at 43, 45).  PNC Bank has not provided documents to show
that Plaintiffs signed this agreement or otherwise agreed to be
bound to its terms.  Thus, the Court cannot enforce its terms,
including the forum selection clause, against Plaintiffs.  This
also causes PNC Bank's economic loss doctrine argument based on
the Treasury Management Services Comprehensive Agreement to be
without merit at this time.  See Arcand v. Brother Intern.
Corp., 673 F. Supp. 2d 282, 308 (D.N.J. 2009) (citing (citing
Alloway v. General Marine Indus., L.P., 149 N.J. 620, 641, 695
A.2d 264 (1997)) ("[T]e economic loss doctrine prohibits
plaintiffs from recovering in tort economic losses to which they
are entitled only by contract." "To be barred by the economic
loss doctrine, the claims must be duplicative of those provided
for under the U.C.C.").

claims, and particularly so for their claims of fraud. <u>See</u> Fed. R. Civ. P. 9(b); <u>EJ MGT LLC v. Zillow Group, Inc.</u>, 2019 WL 981649, at *4 (D.N.J. 2019) (citing <u>In re Rockefeller Ctr. Props., Inc. Sec. Litig.</u>, 311 F.3d 198, 216 (3d Cir. 2002)) ("Independent of the standard applicable to Rule 12(b)(6) motions, Rule 9(b) imposes a heightened pleading requirement of factual particularity with respect to allegations of fraud.").

Based on the foregoing, the Court will deny PNC Bank's motion to dismiss those counts sounding in contract (Counts II, III and IV), negligence (Counts VI and XII) and breach of fiduciary duty (Counts VIII[13] and XIII) and grant such motion regarding those claims sounding in fraud (Counts I, V, X and XIV).

### 2. Plaintiffs' other claims

Plaintiffs have asserted numerous claims against the principals of Home Mortgage Corporation - Sisson and Zagoria - individually and on behalf of Home Mortgage Corporation.[14] They have also asserted claims against Home Mortgage Corporation. As it relates to Sisson and Zagoria, to the extent these claims

---

[13] As set forth <u>infra</u>, Count VIII will be dismissed insofar as it asserts a derivative claim on behalf of Home Mortgage Corporation.

[14] The second amended complaint also lists Defendants Larry Warner, Robin Holland, and Janis Koplin Zagoria as principals of Home Mortgage Corporation. As discussed below, Plaintiffs' claims against these Defendants will be dismissed.

center on their personal involvement in a failed escrow
agreement and breach of the terms of an agreement to purchase
Home Mortgage Corporation they will be allowed to proceed.
(Counts II, III, IV, VI, VIII, XII and XIII).  So too will those
related equitable claims alleged only against the individuals
defendants.  (Count VII (Disgorgement), Count IX (Accounting)
and Count XI (Constructive Trust)).

Plaintiffs' other claims do not fare as well.  As a primary
matter, Plaintiffs admit that they are not shareholders of Home
Mortgage Corporation, and they have not articulated how they may
pursue shareholder derivative claims on behalf of Home Mortgage
Corporation without being shareholders.  See, e.g., Tully v.
Mirz, 198 A.3d 295, 301 (N.J. Super. Ct. App. Div. 2018) (citing
Strasenburgh v. Straubmuller, 683 A.2d 818, 828–29 (N.J. 1996)
(quoting Kamen v. Kemper Financial Svcs., Inc., 500 U.S. 90, 95
(1991)) ("A shareholder derivative action is a unique and
anomalous legal remedy.  The purpose of the derivative action
was to place in the hands of the individual shareholder a means
to protect the interests of the corporation from the misfeasance
and malfeasance of faithless directors and managers."); N.J.S.A.
14A:3-6.2 ("A shareholder may not commence or maintain a
derivative proceeding unless the shareholder: (1) was a
shareholder of the corporation at the time of the act or
omission complained of or became a shareholder through transfer

by operation of law from one who was a shareholder at that time and remains a shareholder throughout the derivative proceeding; and (2) fairly and adequately represents the interests of the corporation in enforcing the right of the corporation."). Thus, the Court must dismiss any of Plaintiffs' claims to the extent they are asserted on behalf of Home Mortgage Corporation, in particular Count VIII.

In addition to their attempt to lodge their claims on behalf of Home Mortgage Corporation, Plaintiffs have also asserted the same claims against Home Mortgage Corporation as they have asserted against Sisson and Zagoria. Plaintiffs, however, make no distinction between Home Mortgage Corporation in its corporate form and the individual members of Home Mortgage Corporation.[15] "A corporation is regarded as an entity separate and distinct from its shareholders." Tully, 198 A.3d at 301 (citing Strasenburgh, 683 A.2d at 828 (other citation omitted). "Only upon proof of fraud or injustice will the corporate veil be pierced to impose liability on the corporate principals." Id. (citations omitted).

---

[15] Home Mortgage Corporation has not appeared in the action. "It has been the law for the better part of two centuries . . . that a corporation may appear in the federal courts only through licensed counsel. As the courts have recognized, the rationale for that rule applies equally to all artificial entities." Van De Berg v. C.I.R., 175 F. App'x 539, 541 (3d Cir. 2006) (quoting Rowland v. California Men's Colony, 506 U.S. 194, 201-02 (1993)).

Even though Plaintiffs' allegations of breach of the purchase agreement, fraudulent conversion of their funds, and other claims regarding outstanding payments appear to reach beyond Home Mortgage Corporation's veil to Sisson and Zagoria individually, Plaintiffs' claims are pleaded collectively against "all Defendants," and do not articulate the distinction between the corporate and individual defendants. In order to comply with Twombly/Iqbal and Rule 8, Plaintiffs must specifically plead which Defendant committed which acts that constitute the alleged violations of law. As presently pleaded, the Second Amended Complaint fails to allege sufficient facts to make out a claim for corporate, as opposed to individual, liability.

This obligation is even higher for Plaintiffs' fraud-based claims and applies with equal force to the individuals and the corporation. Allstate New Jersey Ins. Co. v. Lajara, 117 A.3d 1221, 1231 (N.J. 2015) (citation omitted) ("The elements of common-law fraud are (1) a material misrepresentation of a presently existing or past fact; (2) knowledge or belief by the defendant of its falsity; (3) an intention that the other person rely on it; (4) reasonable reliance thereon by the other person; and (5) resulting damages."); Frederico v. Home Depot, 507 F.3d 188, 200 (3d Cir. 2007) (explaining that Rule 9(b) requires that a party alleging fraud or mistake must state with particularity

the circumstances constituting fraud or mistake, and to "satisfy
this standard, the plaintiff must plead or allege the date, time
and place of the alleged fraud or otherwise inject precision or
some measure of substantiation into a fraud allegation");
Capital Health System, Inc. v. Veznedaroglu, 2017 WL 751855, at
*12 (D.N.J. 2017) (quoting In re Ins. Brokerage Antitrust
Litig., 618 F.3d 300, 362 (3d Cir. 2010); The Knit With v.
Knitting Fever, Inc., 625 F. App'x 27, 36 (3d Cir. 2015))
(explaining that to state a proper RICO claim, a plaintiff must
plead: "(1) conduct (2) of an enterprise (3) through a pattern
(4) of racketeering activity," and in order "to survive a motion
to dismiss, a plaintiff must allege facts to show that each
[d]efendant objectively manifested an agreement to participate,
directly or indirectly, in the affairs of a RICO enterprise
through the commission of two or more predicate acts").

Because Plaintiffs have failed to properly plead any claims
against Home Mortgage Corporation and failed to allege
sufficient facts to make out plausible claims of fraud or
related theories against Sisson and Zagoria individually or the
corporate defendant, the Court must dismiss those claims for
insufficient pleading.

Similarly, Plaintiffs' complaint contains no facts which
could support plausible claims against any of the other
individual defendants named in the complaint.  Plaintiffs assert

claims against Larry Warner, Robin Holland, and Janis Koplin Zagoria as principals of Home Mortgage Corporation, as well as Joes S. Ardgetti, Esquire, Home Mortgage Corporation's registered agent. Plaintiffs' complaint fails to allege a single fact as to how any of these Defendants were involved in Plaintiffs' failed business relationship with Home Mortgage Corporation. Other than asserting thirteen counts against "all Defendants," Plaintiffs' complaint is silent as to how these Defendants are liable for Plaintiffs' alleged damages. Plaintiffs' claims against these defendants must be dismissed as well.

Apparently in acknowledgement of many of the pleading deficiencies noted above, Plaintiffs state that they intend to seek to amend their complaint, and since they have not yet done so, any dismissal of their claims should be without prejudice. Plaintiffs, however, have not actually moved for leave to file an amended complaint. Moreover, except in civil rights cases, a court is not obligated to afford a plaintiff the opportunity to amend his complaint, either *sua sponte* or following the dismissal of the complaint pursuant to a motion to dismiss. Fletcher Harlee Corp. v. Pote Concrete Contractors, Inc., 482 F.3d 247, 251 (3d Cir. 2007).

The Court recognizes that Plaintiffs' counsel who filed the Second Amended Complaint has been relieved as counsel, and

Plaintiffs' new counsel only recently came into the matter while the motions to dismiss were already pending. The Court's Order of dismissal as outlined above will be without prejudice. Plaintiffs with have thirty days to file a motion for leave to file a third amended complaint pursuant to Federal Civil Procedure Rule 15.[16] When filing their motion and proposed third amended complaint, Plaintiffs shall take into consideration the Court's analysis of their claims and the relevant law set forth in this Opinion. Any proposed third amended complaint must comply with Federal Rules of Procedure 8(a), Rule 9(b), and Rule

---

[16] The Court is aware that Sisson has filed a counterclaim against Plaintiffs. (Docket No. 5.) Sisson's counterclaim was filed in relation to the original complaint, which was superseded by the amended complaint and second amended complaint, which has now been dismissed at least in part. Although the dismissal of Plaintiffs' complaint does not automatically extinguish Sisson's counterclaim, the Court's *sua sponte* review of Sisson's counterclaim reveals that it does not assert any affirmative claims against Plaintiffs, other than to claim that "Plaintiffs are misrepresenting themselves as Home Mortgage Corporation when in fact they have no role in the operation of the Company," and Sisson should be awarded damages. (Docket No. 5 at 8.) The Court will therefore dismiss Sisson's counterclaim for failure to meet the Twombly/Iqbal and Rule 8 standard, without prejudice to his right to reassert any counterclaims pursuant to Fed. R. Civ. P. 13 in the event Plaintiffs file a third amended complaint. See, e.g., County of Hudson v. Janiszewski, 351 F. App'x 662, 667 (3d Cir. 2009) (quoting Baraka v. McGreevey, 481 F.3d 187, 195 (3d Cir. 2007)) (affirming the district court's *sua sponte* dismissal of a defendant's counterclaim, noting that "we must accept all factual allegations in [the] complaint[, or in this case, the counterclaim,] as true, [ ] we are not compelled to accept unsupported conclusions and unwarranted inferences, or a legal conclusion couched as a factual allegation").

11.

**CONCLUSION**

For the reasons expressed above, the Court will deny the motions to dismiss brought by the moving Defendants regarding those counts sounding in contract (Counts II, III and IV), negligence (Counts VI and XII) and breach of fiduciary duty (Counts VIII[17] and XIII), which may proceed as individual and not derivative claims, and grant such motion regarding those claims sounding in fraud (Counts I, V, X and XIV). Claims against Sisson and Zagoria on related equitable claims will also be allowed to proceed (Count VII (Disgorgement), Count IX (Accounting) and Count XI (Constructive Trust)). All claims dismissed are dismissed without prejudice. Plaintiffs are afforded thirty days to move for leave to file a third amended complaint. To the extent the parties have not already done so, they are directed to proceed to discovery under the direction of the assigned Magistrate Judge.

An appropriate Order will be entered.


Date: ___March 31, 2019___          ___s/ Noel L. Hillman___
At Camden, New Jersey          NOEL L. HILLMAN, U.S.D.J.

---

[17] As set forth supra, Count VIII will proceed only as an individual claim and not as a derivative claim.